## SCHUSTER *vs.* THE STATE.

[INDICTMENT FOR BETTING AT KENO.]

1. *Selma, city of; charter does not authorize to license gaming.*—The mayor and councilmen of the city of Selma have no authority, under the charter of said city, to license a keno table, to be kept for gaming.
2. *Indictment for betting at gaming table; what evidence irrelevant.*—On the trial of an indictment found in the criminal court of the city of Selma, for betting at a gaming table for gaming, or at a game called keno, evidence offered by the defendant that at the time of the playing the keno table had been licensed by the said city, is irrelevant, and to exclude it is not error.
3. *Same.*—So, too, evidence that it was the public impression in Selma that the said table had been licensed, and that it was no violation of law to bet at it, is irrelevant, and should be rejected.
4. *Charge to jury as to intent with which act was done; what should be refused.* On the trial of such indictment, the following charge, asked by the defendant, should be refused, to-wit: "If defendant, if he did bet, had no intention to violate the law of the State, the jury must acquit him."

APPEAL from the Criminal Court of Dallas.
Tried before Hon. GEORGE H. CRAIG.

The opinion states the facts.

GAYLE, for appellant.
JOHN W. A. SANFORD, *contra.*

[No briefs reached the Reporter.]

PECK, C. J.—Betting at a gaming table for gaming, or at a game called keno, is an indictable offense in this

State.—Revised Code, § 3622. The indictment in this case was found in the city court of Selma, Dallas county, and is in the following words, to-wit: "The grand jury of said county charge, that, before the finding of this indictment, J. B. Schuster bet at a gaming table for gaming, or at a game called keno, against the peace and dignity of the State of Alabama."

Under this indictment the defendant, appellant, was tried and convicted, and fined fifty dollars. On the trial, the defendant offered to prove that, "at the time of said playing, the keno table had been licensed by the city of Selma." This evidence the court rejected as irrelevant, and he excepted. The defendant also offered to prove "that it was the public impression in Selma that the gaming table was licensed, and that it was no violation of law to bet at it." This evidence was rejected, and the defendant excepted.

The defendant did prove "that said game had been run, or carried on, in Selma since the summer in 1868, and that it was generally and openly frequented." The bill of exceptions then states, "the case being thus before the jury, the defendant asked the court to charge the jury, that if Schuster, if he did bet, had no intention to violate the law of the State, they must acquit him." This charge the court refused, and defendant excepted.

The defendant appeals to this court, and insists that the court erred in rejecting the offered evidence, and in refusing to charge the jury as requested.

Whether the game called keno is played on a gaming table called a keno table, I do not know, but suppose it is, as the defendant offered to prove that, "at the time of the playing, the keno table had been licensed by the city of Selma." If the city of Selma had no authority to license a gaming table for gaming called a keno table, then it is very certain the offer to prove the fact was irrelevant, and the evidence offered was properly rejected.

Had the city of Selma any authority to license such a table for gaming? Not unless the authority to do so is *clearly conferred* by its charter. On the 10th day of Octo-

Schuster v. The State.

ber, 1868, an act was passed entitled "An act to establish a new charter for the city of Selma."—Book of Acts 1868, page 227.

By section 18 of said act it is, among other things, declared that the mayor and councilmen of said city shall have full power and authority "to provide for licensing and regulating retailers of liquors within the limits of said corporation, and to fix the sum to be paid for the same, and annulling the same, on good and sufficient complaint being made against the person holding such license; for the regulating hackney-coaches, carriages, wagons, carts, and drays, and for licensing the same; and for the regulating of pawn-brokers within the city; *to restrain or prohibit gambling*, and to provide for licensing and regulating cock-fighting, or pits, theatrical and other public amusements within the city." Said section concludes as follows, to-wit: "and to pass all such resolutions, by-laws and ordinances as they, or a majority of them, may deem requisite and necessary for the good government of the said city, *not contrary to the laws of the State of Alabama.*"

If the closing part of this section were omitted, we think, by no reasonable interpretation of the words "*to restrain or prohibit gambling*," can they be held to confer on the mayor and councilmen of said city the authority to license a keno table, to be kept for gaming.

So far as we know, by the laws of this State, no such table kept for gaming is, or can be "regularly licensed," but, on the contrary, to keep or exhibit, or to be interested or concerned in keeping or exhibiting such a table for gaming, is a high misdemeanor; and, by said section 3622, to bet or hazard any money, bank-note, or other thing of value, at a game called keno, is expressly declared to be an offense for which, on conviction, the guilty party is to be fined in a sum not less than fifty dollars. But the defendant's counsel insists, and says, "the charter gave the city the power 'to restrain or prohibit gambling,' and if a license was granted to run a game of keno, it must have been, and was, a license in *restraint* of gambling, by the imposition

of a heavy tax. As the power to restrain or prohibit is disjunctively given, it is a proper interpretation of the charter to say the city had the power to license under *restraint*." We can not yield our assent to the correctness of this reasoning. These words, "to restrain or prohibit gaming," must not be so construed as to confer a power in conflict with the laws of the State, and any construction that does so, can not be the true construction; and, as the laws of the State make it an offense to keep a keno, or any other like table for gaming, or to bet at a game called keno, these words should not be held to confer on the mayor and councilmen of said city the power to license and make lawful what the laws of the State declare to be an offense. We think it fair to presume, if it had been the intention of the legislature to confer on the city the power to license gaming, they would have used the appropriate words for that purpose, as they have done, not only in the same section, but also in the same sentence, in relation to retailing, cock-fighting, &c. For these reasons, we hold that the words, "to restrain or prohibit gaming," as here used, do not mean to *license or prohibit gaming;* therefore, the evidence offered to prove that, at the time of the playing, the keno table had been licensed, &c., was irrelevant, and for this reason was properly excluded.

2. The court committed no error in refusing to permit the defendant to prove "that it was the public impression in Selma that the gaming table was licensed, and that it was no violation of law to bet at it." Public impression can not make that lawful, which the laws of the State declare to be unlawful; nor will such public impression excuse any one who violates the laws under its influence.

3. Nor did the court err in refusing to charge the jury, that if defendant, if he did bet had no intention to violate the law of the State, they must acquit him. It may be conceded that, generally, an unlawful intent is necessary to make out an offense, but if the absence of an unlawful intent arises out of an ignorance of the law, it will be no excuse. The maxim is, "ignorance of fact excuses, but

ignorance of the law does not excuse." Thus, if a man intending to kill a thief, or house-breaker, in his own house, and under circumstances which would justify him in so doing, but by mistake kills one of his own family, this is no criminal action; but if a man thinks he has a right to kill a person excommunicated or outlawed, wherever he meets him, and does so, this is willful murder. For, a mistake in point of law, which every person of discretion not only may, but is bound and presumed to know, is, in criminal cases, no sort of defense.—Broom's Legal Max. m. p. 264. This author also says, " every man is presumed to be cognizant of the statute law of this realm, and to construe it aright; and if any individual should infringe it through ignorance, he must, nevertheless, abide by the consequences of his error. It will not be competent to him to aver, in a court of justice, that he has mistaken the law, this being a plea which no court of justice is at liberty to receive."

It is manifest, that the absence of an unlawful intent on the part of the defendant in this case, if in fact it existed, grew out of his ignorance of the law, that is, because he believed it was lawful for the city authorities of Selma to license the said keno table for gaming, and being licensed, as he believed, it was lawful for him to bet at it. In both of these points of law he was mistaken, and, as said author says, he must abide the consequences of his error.

The judgment is affirmed, at appellant's costs.